# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

RAYMOND H. PIERSON, III and JOANNE R. WERNTZ,

                Plaintiffs,

-vs-                                            Case No. 6:08-cv-466-Orl-28GJK

ORLANDO REGIONAL HEALTHCARE SYSTEMS, INC., *et. al.*,

                Defendants.
_____

## REPORT AND RECOMMENDATION

### TO THE UNITED STATES DISTRICT COURT

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **DEFENDANTS' ROY SANDERS, M.D. AND MUSCULOSKELETAL INSTITUTE CHARTERED, AMENDED MOTION FOR ATTORNEY'S FEES AND COSTS (394)** |
| **FILED:** | August 25, 2011 |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part,** and that Movants be awarded $122,603.74 ($93,633.00 in attorneys' fees and $28,970.74 in costs).

| | |
|---|---|
| **MOTION:** | **DEFENDANTS' ROY W. SANDERS, M.D. AND MUSCULOSKELETAL INSTITUTE CHARTERED, MOTION FOR SANCTIONS (Doc. No. 397)** |
| **FILED:** | September 8, 2011 |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

## I. BACKGROUND.

On January 25, 2008, Raymond H. Pierson, III, M.D. ("Pierson"), an orthopaedic surgeon who served on the trauma and emergency call schedules at two hospitals operated by Orlando Regional Healthcare Systems, Inc. ("ORHS"), filed the first of four complaints against numerous defendants arising out of a peer review process which resulted in the termination of Pierson's surgical privileges at the hospitals. Doc. Nos. 1, 3, 202, 235. On August 31, 2009, Pierson filed a Third Amended Complaint (the "Complaint") against ORHS, Erik Lieberman ("Lieberman"), as personal representative of the Estate of Philip G. Spiegel ("Spiegel"), Roger Murbach ("Murbach"), Steven Appelblatt ("Appelblatt"), Frank Bone ("Bone"), William Bott ("Bott"), Thomas Csencsitz ("Csencsitz"), J. Dean Cole ("Cole"), John Hillenmeyer ("Hillenmeyer"), J. David Moser ("Moser"), N. Donald Diebel ("Diebel"), Rory Evans ("Evans"), Manuel J. Galceran ("Galceran"), Hedrick J. Rivero ("Rivero"), C. Gordon Wolfram ("Wolfram"), Roy W. Sanders ("Sanders"), Gregory A. Rief ("Rief") and Linda G.T. Parks ("Parks"), as copersonal representatives of the Estate of John Connolly ("Connolly"), Wolverine Anesthesia Consultants M.D., P.A. ("Wolverine"), and Musculoskeletal Institute, Chartered d/b/a Florida Orthopaedic Institute ("MIC") (collectively, the "Defendants"). Doc. No. 235.[1]

The Complaint contained eleven (11) counts: Count I – breach of contract; Count II – defamation; Count III – fraud in the inducement; Count IV – fraud; Count V – intentional infliction of emotional distress; Count VI – negligent hiring and supervision of those conducting the "sham" peer review; Count VII – declaratory relief; Count VIII – civil conspiracy to defame;

---

[1] In addition, Pierson's ex-wife, Joanne R. Werntz, M.D., intervened in the case to assert a claim for loss of consortium. Doc. No. 230.

Count IX – civil conspiracy to breach the Bylaws; Count X – civil conspiracy; and Count XI – civil conspiracy to defraud. *Id.* "In November 1996, [Pierson] was summarily suspended from emergency and trauma call – but was allowed to otherwise continue to treat [patients] at the hospitals – while a review of his surgical practices was conducted; ultimately, [Pierson] was indefinitely suspended from emergency and trauma call via a resolution of the ORHS Board in January 2004." Doc. No. 315 at 1-2. The gravamen of Pierson's Complaint is that his surgical privileges at ORHS were wrongfully suspended through a sham peer review process implemented by ORHS and orchestrated by the Defendants. *Id.*

On April 6, 2010, Judge Antoon dismissed with prejudice Counts II, III, IV, V, VI, VIII, IX, X and XI on various grounds (the "Order"). Doc. No. 315.[2] In doing so, Judge Antoon stated:

> Because <u>a peer review proceeding is at issue in this case</u>, Plaintiff also faces the hurdle of overcoming the qualified privilege provided by a Florida statute to peer review participants. Section 395.0193(2), Florida Statutes, requires, as a condition of licensure, that hospitals provide for peer review of physicians, and section 395.0193(5), Florida Statutes, states that '[t]here shall be no monetary liability on the part of, and no cause of action for damages against, any licensed facility, its governing board or governing board members, peer review panel, medical staff, or disciplinary body, or its agents, investigators, witnesses, or employees; a committee of a hospital; or any other person, for any action taken **without intentional fraud** in carrying out the provisions of this section.' § 395.0193, Fla. Stat. (emphasis added). <u>Because participants in peer review are immune from suit unless they acted with intentional fraud, '[t]o fall outside of the immunity provided by subsection 395.0193(5), [a plaintiff is] required to plead intentional fraud with particularity</u>.' *Cedars Healthcare Group, Ltd. v. Mehta*, 16 So. 3d 914, 917 (Fla. 3d DCA 2009).

---

[2] Dr. Werntz's Second Amended Complaint in Intervention (Doc. No. 230) was also dismissed with prejudice. *Id.*

3

Doc. No. 315 at 10-11 (emphasis in original and added). Thus, in his order, Judge Antoon determined that Section 395.0193 applies to this case. *Id*

Counts II, V, VIII, X, and XI of the Complaint sought to hold Sanders and MIC vicariously liable for the actions of Spiegel, an orthopedist who conducted an outside review of Pierson's surgical cases. The Order found that the Complaint "does not contain any allegations that Spiegel was acting within the scope of employment, and thus no basis for [Sanders and MIC's] vicarious liability for the torts of Spiegel has been set forth." Doc. No. 315 at 13. The Court also found that Pierson failed to plead facts sufficient to state a cause of action for civil conspiracy against Sanders in Count X. Doc. No. 315 at 14-15.

In the Order the Court also stated the following:

> [A] Florida statute provides for immunity from suit for peer review participants who act "without intentional fraud." § 395.0193(5), Fla. Stat. Thus, a plaintiff asserting claims based on events occurring in connection with peer review must "plead intentional fraud with particularity" in order to state claims that fall outside this statutory immunity. *Cedars*, 16 So.3d at 917. Defendants contend that [Pierson] has not pleaded intentional fraud as required to overcome the qualified privilege afforded by the statute. The Court agrees. . . . Because [Pierson] has not pleaded "intentional fraud" with specificity as required by Florida Statute and case law, he has not overcome the statutory qualified privilege that attaches to peer review. For this reasons alone, [Pierson's] tort claims are due to be dismissed.

Doc. No. 315 at 15, 18. Thus, because Pierson failed to plead intentional fraud with specificity against any of the Defendants, pursuant to Section 395.0193(3), all of Pierson's tort claims failed due to the qualified immunity contained therein. *Id*. On October 28, 2010, the Court entered judgment in favor of Defendants and against Pierson and Werntz. Doc. No. 365.

4

Pierson appealed, but, on August 12, 2011, the Eleventh Circuit Court of Appeals entered an order stating:

> The "Notice of Voluntary Dismissal…," which is construed as a joint motion to dismiss this appeal with prejudice as to Appellees [Sanders and MIC], with [Pierson] to pay appellate attorneys fees to these appellees, and the issue of the amount of appellate attorney's fees awardable to these appellees to be remanded to the District Court for its determination, is GRANTED.

Doc. No. 392 at 2-3. Thus, as to Sanders and MIC, the appeal has been voluntarily dismissed with prejudice and they have been awarded appellate attorneys' fees, the amount of which is to be decided by the District Court. *Id*.

## II. **THE MOTION**.

On August 25, 2011, Sanders and MIC (hereinafter, collectively the "Movants") filed an Amended Motion for Attorneys' Fees and Costs (the "Motion") arguing that pursuant to Sections 395.0193(9)(a) and 766.101(6), Florida Statutes, they are entitled to recover their attorneys' fees and costs against Pierson and Werntz. Doc. No. 394.[3] Movants contend that this action arises out of Pierson's peer review process and, therefore, Section 395.0193, Florida Statutes, applies,

---

[3] Section 395.0193(9)(a), Florida Statutes, provides:

> If the defendant prevails in an action brought by a staff member or physician who delivers health care services at the licensed facility against any person or entity that initiated, participated in, was a witness in, or conducted any review as authorized by this section, the court shall award reasonable attorney's fees and costs to the defendant.

Fla. Stat. § 395.0193(9)(a). Section 766.101(6), Florida Statutes, provides:

> In the event that the defendant prevails in an action brought by a health care provider against any person that initiated, participated in, was a witness in, or conducted any review as authorized by this section, the court shall award reasonable attorney's fees and costs to the defendant.

Fla. Stat. § 766.101(6).

including sub-section (9)(a)'s provision for attorneys' fees and costs. Doc. No. 394 at 5-6. Movants request an award of $106,473.00 in attorneys' fees and costs, which includes $81,545.50 in attorneys' fees and $30,311.89 in costs for proceedings before the District Court, and $24,927.50 in attorneys' fees and $278.46 in costs before the Eleventh Circuit. Doc. No. 394 at 10-11.

Movants attach detailed affidavits and time sheets in support of the Motion. Doc. No. 395. The following chart summarizes the attorneys' fees requested in the Motion for work expended before the District Court:

| ATTORNEY/ PARALEGAL | HOURS | RATE | TOTAL |
|---|---|---|---|
| Mark E. McLaughlin, Esq. | 267.2 | $200.00 | $53,440.00 |
| Jonathan F. Carr, Esq. | 32.7 | $200.00 | $6,540.00 |
| Andrew S. Bolin, Esq. | 20.5 | $200.00 | $4,100.00 |
| A. Crosby Crane, Esq., | .7 | $200.00 | $140.00 |
| Craig M. Harris, Esq. | 4.3 | $150.00 | $645.00 |
| Rebecca R. Johns, Esq. | 103.6 | $155.00 | $16,058.00 |
| Caroline A. Fielding | 8.3 | $75.00 | $622.50 |
| **Total** | **437.30** | | **$81,545.50** |

Doc. No. 395 at 3.

The following chart summarizes the attorneys' fees requested in the Motion for work expended before the Eleventh Circuit Court of Appeals:

| ATTORNEY/ PARALEGAL | HOURS | RATE | TOTAL |
|---|---|---|---|
| Mark E. McLaughlin, Esq. | 33.3 | $200.00 | $6,660.00 |
| Jonathan F. Carr, Esq. | 90.7 | $200.00 | $18,140.00 |
| Caroline A. Fielding | 1.7 | $75.00 | $127.50 |
| **Total** | **125.7** | | **$24,927.50** |

Doc. No. 395 at 3. Thus, Movants request a total award of attorneys' fees in the amount of $106,473.00 ($81,545.50 + $24,927.50). *Id*.

As for costs, the following chart reflects the costs requested before the District court and the Eleventh Circuit:

| **District Court Costs** | **Amount** |
|---|---|
| Costs of transcription | $27,912.36 |
| Travel expenses | $427.42 |
| Copies | $352.50 |
| Legal Research | $1,619.61 |
| **Total in District Court** | **$30,311.89** |
| **Eleventh Circuit** | |
| Travel expenses | $54.83 |
| Copies | $168.80 |
| Federal Express | $54.83 |
| **Total in Eleventh Circuit** | **$278.46** |

7

| Grand Total | $30,590.35 |
|---|---|

Doc. No. 395 at 4-5. In the affidavit, Mark E. McLaughlin states that all of the above costs are recoverable under 28 U.S.C. § 1920. Doc. No. 395 at 4.

On September 30, 2011, Pierson filed a response (the "Response") arguing that the Court should deny the Motion in its entirety. Doc. No. 411 at 14-15.[4] Pierson states that this "case stems from the sham peer review conducted by Defendants," and "[a]ll claims stemmed from the same general set of circumstances ([Pierson's] removal and suspension from ORHS trauma and emergency call) during the same period of time." Doc. No. 411 at 2-3. Nevertheless, Pierson asserts that the claims at issue in this case did not arise under Sections 395.0193 or 766.101, Florida Statutes, but were in fact discrete tort claims, such as defamation, fraud, intentional infliction of emotional distress, negligent supervision and hiring, and civil conspiracy. Doc. No. 411 at 4. Thus, Pierson argues that attorneys' fees and costs are not appropriate. *Id*. Alternatively, Pierson maintains that even if Sections 395.0193 and 766.101 apply, those statutes specifically exempt claims of "intentional misconduct," like the claims asserted by Pierson in this case, from the immunity afforded under those statutes. Doc. No. 411 at 5. In the Response, Pierson does not address, in any way, the amount of attorneys' fees and costs requested by Movants.

---

[4]The Response does not specifically address the award of attorneys' fees and costs by the Eleventh Circuit. Doc. No. 411.

On November 3, 2011, Movants filed a reply asserting that the Court has already determined, in the Order, that the claims at issue in this case arose under Section 395.0193 to the extent that the qualified immunity set forth therein barred Pierson's claims. Doc. No. 417 at 4.

### III. MOTION FOR SANCTIONS.

On September 8, 2011, Movants filed a Motion for Sanctions against Pierson and Werntz's attorneys pursuant to 28 U.S.C. § 1927. Doc. No. 397. Movants maintain Section 1927 sanctions are appropriate against counsel because they prosecuted the claims in objective bad faith by knowingly or recklessly pursuing frivolous claims against Movants and by continuing to litigate the case after January 6, 2009. Doc. No. 397 at 6-17. Movants state that counsel were on notice that the claims against Movants were frivolous as of January 6, 2009, when Movants' counsel sent them a letter stating that there are "no material facts or legal theories which would permit Dr. Pierson to survive the summary judgment as to [Movants]." Doc. No. 397-1 at 1-2. Movants state that Pierson's counsel's objective bad faith is evidenced by their refusal to dismiss Movants and to continue with discovery after January 6, 2009. Doc. No. 397 at 8. Movants also state that their discovery responses, including Sanders' affidavit, Sanders' deposition and their answers to Pierson's interrogatories, and Dr. Moser's deposition clearly indicate that Pierson's claims against Movants lacked justification and evidentiary support. Doc. No. 397 at 9-13. Thus, Movants assert that Pierson's claims against them "were wholly unsupported by any evidence whatsoever and therefore [Pierson's] Counsel had an obligation to cease the litigation against [Movants]. Doc. No. 397 at 14. Movants request an award of $100,617.29 in attorneys' fees and costs against Pierson's counsel, representing attorneys' fees and costs incurred after January 6, 2009. Doc. No. 397 at 17.

9

On October 19, 2011, Pierson filed a response arguing that sanctions are not warranted under 28 U.S.C. § 1927. Doc. No. 415.[5] In support, Pierson attaches the affidavit of John F. Romano, which states:

> Regarding the case that was filed . . . against [Movants], those claims were made on the good faith belief that there was a reasonable basis for involvement and connection by these [Movants] with what we believe to have been a wrongful or sham peer review process. This was so for a multitude of reasons including, but not limited to, the following:
> a. Dr. Spiegel, who performed the "outside review" of Dr. Pierson's case on ORHS, was an employee of MIC and was supervised directly by Dr. Sanders;
> b. Dr. Spiegel used [MIC] cases in his rebuttal report to criticize Dr. Pierson's care and treatment of patients.
> c. Dr. Sanders was aware of and directly affected by Dr. Pierson's legitimate criticisms of [MIC]'s failed proposal to create an independent state-wide orthopedic surgery provider association. . . .
>
> The complex nature of this case, both factually and legally, necessitated lengthy and comprehensive discovery, which was still ongoing in April 2010. . . . Prior to filing the Complaint(s) in the instant case . . . I:
> a. conducted a thorough investigation to determine whether or not there existed sufficient evidence basis to assert the allegations in the Complaint(s);
> b. spoke to key witnesses, reviewed all of the employment documentation for ORHS, MIC and related facilities, including the Bylaws and applicable administrative policies and procedures;
> c. reviewed hundreds of pages of additional documents including all of Dr. Pierson's reports, the reports of Defendants' experts, ORHS documents that related to Dr. Pierson's tenure at its facilities, and more;
> d. reviewed thousands of pages of documents related to Pierson's "peer review" and the IC process that led to said "peer review";

---

[5] In the response, Pierson again states that "[t]he underlying litigation . . . arose after an unduly lengthy sham peer review conducted by Defendants. . . ." Doc. No. 415 at 2.

    e. reviewed hundreds of pages of documents related to Pierson's average patient recovery time, as well as the standard average patient recovery time guidelines established by ORHS . . . and related facilities, and the applicable standard of care for orthopedic trauma surgery;
    f. investigated the financial relationships and connections between the parties, any pre-existing adversarial personal and professional relationships, as they related to the Plaintiff's claims. . . .

    In good faith, I critically evaluated the information yielded by discovery, as it proceeded with each Defendant, in the context of Plaintiff's claims and concluded in good faith that valid causes of action existed and significant questions of fact remained for the trier of fact to resolve. At no time did I deliberately delay the progress of the case, seek to harass Defendants in any way, willfully abuse the judicial process, or otherwise multiply the proceedings here.

Doc. No. 451-1 at 2-5. Thus, counsel for Pierson argues that the Motion for Sanctions should be denied because "at no time did the conduct of [Pierson's] counsel violate any of the recognized standards for attorneys conducting litigation, or evince any willful abuse of the judicial process, much less meet the high standard of egregiousness required for the imposition of excess costs of litigation under Section 1927." Doc. No. 415 at 8.

## IV. ANALYSIS.

### A. The Motion.

Section 395.0193(9)(a), Florida Statutes, provides:

> <u>If the defendant prevails in an action brought</u> by a staff member or <u>physician</u> who delivers health care services at the licensed facility <u>against any person or entity that</u> initiated, <u>participated in</u>, was a witness in, or conducted <u>any review as authorized by this section, the court shall award reasonable attorney's fees and costs to the defendant</u>.

Fla. Stat. § 395.0193(9)(a) (emphasis added). Thus, the Court shall award reasonable attorneys' fees and costs to a defendant who prevails in an action brought by a physician (or health care provider) arising out of a peer review. *Id.*

In the Order, the Court explicitly found that a "peer review proceeding is at issue in this case," and that Section 395.0193 applies to this case. Doc. No. 315 at 10-11. Indeed, the Court ultimately held that Pierson's tort claims against the Defendants were due to be dismissed because Pierson's Complaint failed to sufficiently overcome the qualified immunity clause contained in Section 395.0193(5). Doc. No. 315 at 15, 18. Thus, Movants have prevailed in this action through operation of Section 395.0193(5)'s qualified immunity clause. Moreover, although Pierson maintains that this was not an action brought directly under Section 395.0193, he acknowledges that his action arose from a wrongful and sham peer review. Doc. Nos. 411 at 2-3; 415 at 2; 415-1 at 2. Accordingly, it is recommended the Court find that Section 395.0193(9)(a) applies to this case and an award of attorneys' fees and costs is warranted.[6]

B. **Quantification of Fees and Costs.**

In the Eleventh Circuit, reasonableness is generally determined using the familiar lodestar approach. "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir.1994) (per curiam); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party moving for fees has the burden of establishing that the hourly rate and hours expended are

---

[6] Because it is recommended that an award of attorneys' fees and costs is warranted under Section 395.0193(9)(a), it is not necessary to address whether an award of fees and costs is also warranted under Section 766.101(6).

reasonable. *See Norman v. Housing Auth. of the City Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

To meet the burden of proving hourly reasonable rate, the moving party must produce "satisfactory evidence" that the hourly rate being requested is in line with "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Id.* at 1299. At a minimum, this will require "more than the affidavit of the attorney performing the work." *Id.* In the case at bar, there is no dispute about the reasonableness of the hourly rates charged by Defendants' counsel. Thus, the only issue for determination is whether the hours claimed by Defendants' counsel are reasonable.

When submitting the hours reasonably expended by the moving party's attorney, the moving party must exercise "billing judgment." *Hensley*, 461 U.S. at 434. This requires the moving party to exclude hours that are "redundant, excessive, or otherwise unnecessary." *Id.* The court will excise redundant, excessive or unnecessary hours when a party fails to. *See Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). In proving reasonable hours, a movant "should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so [the court] can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. A party opposing a fee application should also submit objections and proof that are "specific and reasonably precise" concerning those hours that should be excluded. *Barnes*, 168 F.3d at 428.

When there is a "lack of documentation or testimonial support the court may make the award on its own experience," as this Court is an expert on the issues of reasonable hourly rate

and reasonable hours expended. *Norman*, 836 F.2d at 1303. This Court may also "award attorney's fees based solely on affidavits in the record." *Id.* Although this Court is afforded discretion in awarding a reasonable attorney's fee, the discretion is not unlimited. *Id.* at 1304. An order on a motion for attorney's fees "must articulate the decisions [the Court] made, give principled reasons for those decisions, and show its calculation. If the court disallows hours, it must explain which hours are disallowed and show why an award of these hours would be improper." *Id.*

In this case, Pierson has raised no objections to reasonableness of the hourly rates or the hours expended by the attorneys and paralegals. In the absence of any particularized objections and based upon the affidavit provided, as well as the undersigned's own understanding of the prevailing market rate, it is recommended that the Court find that the hourly rates requested are reasonable.

As for the hourly rates, Movants have failed to provide the Court with evidence justifying certain hours claimed for two of Movants' attorneys. In the charts set forth above, Movants request at total of 300.5 hours for Mark E. McLaughlin, Esq., representing 267.20 hours before the District Court and 33.3 hours before the Eleventh Circuit. Doc. No. 395 at 3. However, the time sheets provided by Movants show only 282.2 hours of work expended by Mr. McLaughlin. Doc. No. 395 at 8-88. Accordingly, in the absence of any supporting documentation, Mr. McLaughlin's hours should be reduced by 18.3 hours (300.5 – 282.2).

Movants also request a total of 123.4 hours for Jonathan F. Carr, Esq., representing 32.70 hours before the District court and 90.7 hours before the Eleventh Circuit. Doc. No. 395 at 3. However, the time sheets provided by Movants demonstrate only 77.5 hours of work expended

14

by Mr. Carr. Doc. No. 395 at 8-88. Accordingly, in the absence of any supporting documentation, Mr. Carr's hours should be reduced by 45.9 hours (123.4 – 77.5).

Having carefully reviewed the hours expended, it is recommended that the Court find the remaining hours claimed are reasonable. Accordingly, it is recommended that the Court award a total amount of $93,633.00 in attorneys' fees as set forth in the chart below:

| ATTORNEY/ PARALEGAL | HOURS | RATE | TOTAL |
| --- | --- | --- | --- |
| Mark E. McLaughlin, Esq. | 282.2 | $200.00 | $56,440.00 |
| Jonathan F. Carr, Esq. | 77.5 | $200.00 | $15,500.00 |
| Andrew S. Bolin, Esq. | 20.5 | $200.00 | $4,100.00 |
| A. Crosby Crane, Esq., | .7 | $200.00 | $140.00 |
| Craig M. Harris, Esq. | 4.3 | $150.00 | $645.00 |
| Rebecca R. Johns, Esq. | 103.6 | $155.00 | $16,058.00 |
| Caroline A. Fielding | 10.0 | $75.00 | $750.00 |
| **Total** | **498.8** | | **$93,633.00** |

Regarding costs, Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are <u>necessarily obtained for use in the case</u>;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920 (emphasis added). The Court has the discretion to award those costs specifically enumerated in 28 U.S.C. § 1920. *See Crawford*, 482 U.S. at 440-44. The Court may not tax as costs any items not included in 28 U.S.C. § 1920. *Id.*; *see also Morrison v. Reichhold Chems., Inc.*, 97 F.3d 460 (11th Cir.1996).

In this case, all of the costs requested are recoverable under Section 1920 except for computerized legal research. *See Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) (computerized legal research is not recoverable under Section 1920). Therefore, it is recommended that the Court decline to award $1,619.61 in costs for computerized legal research. Accordingly, the undersigned recommends that the Court award the remaining costs in the amount of $28,970.74 ($30,590.35 - $1,619.61).

**C.     The Motion for Sanctions.**

28 U.S.C. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*Id*. There are only two requirements for sanctions under Section 1927. First, an attorney must engage in "unreasonable and vexatious" conduct. *See Hudson v. International Computer Negotiations, Inc.*, 499 F.3d 1252, 1261 (11th Cir. 2007). An attorney's conduct satisfies the first requirement "only when the attorney's conduct is so egregious that it is tantamount to bad faith." *Amlong & Amlong, P.A. v. Denny's, Inc.,* 457 F.3d 1180, 1190 (11th Cir. 2006) (internal quotation marks and citation omitted). Second, that "unreasonable and vexatious" conduct must multiply the proceedings. *Hudson*, 499 F.3d at 1261. When determining the dollar amount of a sanction under Section 1927, the sanction "must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id*. at 1261 (internal quotations omitted).

In this case, Movants have failed to come forth with any evidence showing bad faith on the part of Pierson's counsel. While Movants have provided the Court with their own discovery responses, deposition testimony, and letters to Pierson's counsel, that information does not establish that Pierson's counsel acted in bad faith. The original complaint in this case was filed on January 25, 2008, and the Complaint was filed on August 21, 2009. Doc. Nos. 1, 235. Defendants moved to dismiss the Complaint on September 11, 2009, and the Court issued its Order, after extensive briefing and oral argument, on April 6, 2010. Doc. Nos. 237-39, 241-42, 265, 315. Pierson's counsel has provided an affidavit detailing his pre-suit investigation and the basis for Pierson's claims against Movants. Doc. No 451-1 at 2-5. Thus, the Court finds that Movants have failed to meet their burden demonstrating that Pierson's counsel acted in bad faith. Accordingly, it is recommended that the Court **DENY** the Motion for Sanctions.

## V. CONCLUSION.

Based on the forgoing, it is **RECOMMENDED** that the Court:

1. **GRANT** the Motion (Doc. No. 394) in part and, pursuant to Section 395.0193(9)(a), Florida Statutes and 28 U.S.C. § 1920, award Movants $122,603.74 ($93,633.00 in attorneys' fees and $28,970.74 in costs), and otherwise **DENY** the Motion; and

2. **DENY** the Motion for Sanctions (Doc. No. 397).

Failure to file written objections to the proposed findings and recommendations contain within this report and recommendation within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on December 13, 2011.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Parties